1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF CALIFORNIA
8
9   DOCTORS MEDICAL CENTER OF            1:08-cv-01231 OWW DLB
    MODESTO,
10                                       MEMORANDUM DECISION AND
                Plaintiff,               ORDER ON DEFENDANT MAXIMUS'S
11                                       MOTION FOR JUDGMENT ON THE
                v.                       PLEADINGS, DEFENDANT
12                                       GLOBAL'S MOTIONS TO DISMISS
    GLOBAL EXCEL MANAGEMENT, INC.,       PURSUANT TO FED. R. CIV. P.
13  ET AL.,                              12(b)(2) and 12(b)(6), AND
                                         PLAINTIFF'S AND DEFENDANT
14              Defendants.              GLOBAL'S MOTIONS FOR
                                         SANCTIONS (Docs. 7, 10 & 35)
15
16                      I.  INTRODUCTION.
17       Plaintiff Doctors Medical Center of Modesto ("Doctors
18  Medical") filed this action against Defendants Global Excel
19  Management, Inc. ("Global") and Maximus, Inc. ("Maximus") in the
20  Superior Court of California, County of Stanislaus, on June 9,
21  2008, asserting claims for breach of contract and common counts
22  (goods and services rendered) against Global and a claim for
23  intentional interference with contractual relations against
24  Maximus.  Defendants removed this action based on diversity of
25  citizenship on August 19, 2008.  Plaintiff contends it provided
26  emergency hospital services in June 2006 to a patient who was a
27
28
                              1

member of Global's health plan.[1]  Global retained Maximus to provide a review of Plaintiff's charges and Maximus allegedly recommended that Global pay Plaintiff less than one-third of Plaintiff's total charges for the services.  Plaintiff alleges that Global tendered a check in the amount recommended by Maximus and marked it "payment in full."  Plaintiff asserts that it deposited the check under protest.  Doctors Medical now sues to recover the remaining balance.

Before the court for decision are five motions, one brought by Defendant Maximus, three brought by Defendant Global, and one motion for sanctions brought by Plaintiff.  First, Maximus moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the grounds that: 1) Maximus's conduct in rendering an opinion to Global on the reasonable value of Plaintiff's services was privileged because a) Maximus was acting as Global's agent and thus cannot be held liable for inducing a breach of the corporation's contract, b) Maximus is protected by the common interest privilege proscribed by Cal. Civ. Code § 47(c), and c) Maximus is protected by the common law adviser's privilege, and 2) the complaint fails to allege facts establishing the existence of an enforceable contract between Plaintiff and Global, which is required to support a claim for intentional interference with contractual relations.  (Doc. 7.)

Second, Defendant Global moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that as a

_____

[1] Global and Maximus dispute the characterization of Global as a health plan, asserting that Global acts as a third party claims administrator.

Canadian corporation with its principal place of business in Quebec, Canada, there is insufficient evidence to establish that Global has or had minimum contacts with California to subject it to the jurisdiction of this court. (Doc. 10.) Third, Defendant Global moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the facts as alleged demonstrate the existence of the defense of accord and satisfaction. (Doc. 11.) Finally, Plaintiff and Defendant Global cross-move for sanctions pursuant to Fed. R. Civ. P. 11. (Docs. 30 & 35.)

## II. FACTUAL AND PROCEDURAL BACKGROUND.

This action arises out of a dispute between Plaintiff Doctors Medical and Defendant Global Excel over what constitutes a reasonable and customary value of Plaintiff's services to a patient. Doctors Medical Center is a non-profit California corporation that has its principal place of business in Modesto, California. Doctors Medical Center is a hospital that provides medical care to patients. Defendant Global is a Canadian corporation. It maintains that it acts as a third party claims administrator, not a health plan or insurer. Defendant Maximus is a company that provides independent external reviews of claims to private entities as well as the federal and various state governments. Plaintiff contends that it provided emergency hospital services from June 6, 2006 to June 9, 2006 to a patient who was a member-enrollee of Global's "health plan." (Complaint at ¶8.) According to Global, the patient, identified as M.D. in the complaint, was insured under a traveler's health insurance policy issued by Elvia France. M.D., a citizen of France, was

3

hospitalized while on a visit to the United States.

Doctors Medical charged $159,207.21 for M.D.'s three-night stay. (Complaint at ¶11.) Plaintiff alleges Global hired Maximus to review Plaintiff's charges and, in a letter to Global dated November 21, 2006, Maximus recommended that Global pay Plaintiff $46,404.26. (Complaint at ¶14.) Plaintiff alleges Global tendered a check to Plaintiff for this amount. An accompanying letter advised Plaintiff that negotiation of the check constituted "payment in full" and would release Global from any further liability. (Complaint at ¶13.) Plaintiff deleted the "payment in full" language on the check stub and deposited the check under protest. (*Id*. at ¶15.) Plaintiff now sues to recover the remaining $112,802.95 it claims it is owed. (*Id*. at ¶16.)

III. **DEFENDANT MAXIMUS'S MOTION FOR JUDGMENT ON THE PLEADINGS**.

A. **Legal Standard**.

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings after the pleadings are closed. Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Honey v. Distelrath*, 195 F.3d 531, 532-33 (9th Cir. 1999) (citing *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). The court must assume the truthfulness of the material facts alleged in the complaint. All inferences reasonably drawn from these facts must be construed in favor of the responding party.

**4**

*Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *see also General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregation Church*, 887 F.2d 228, 230 (9th Cir. 1989). In addition, all allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Allegations of the moving party which have been denied are assumed to be false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990)

     As with a motion to dismiss pursuant to Rule 12(b)(6), if matters outside of the pleadings are presented to and not excluded by the court on a motion for judgment on the pleadings, the motion shall be treated as one for summary judgment. Fed. R. Civ. P. 12(c). Nevertheless, a court may take judicial notice of matters of public record, including "records and reports of administrative bodies" without converting the motion to one for summary judgment. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Generally when ruling on a motion to dismiss, the court must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint. *Hal Roach*, 896 F.2d at 1555 n. 19. However, the "incorporation by reference" doctrine permits a court to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

1994)).  The Ninth Circuit has extended the "incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity); *see also Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (taking into account newspaper article containing allegedly defamatory statement under the "incorporation by reference" doctrine where it was "central" to plaintiff's claim, defendant attached it to the motion for judgment on the pleadings, and plaintiff did not contest its authenticity).

**B.   Is Maximus's Conduct Protected Because It Was Acting as Global's Agent?**

The tort cause of action for interference with a contract does not lie against a party to the contract.  *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990).  Otherwise, a litigant would be able to circumvent the restriction against recovery of tort damages in breach of contract cases.  *See Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990, 999 (1977) (allowing a plaintiff to

6

transform a breach of contract claim into the tort of intentional interference with contractual relations would "enable him to recover tort damages . . . to which he is not entitled under California law."). Just as a corporation cannot be sued for inducing a breach of the corporation's own contract, neither can its corporate agents. *Shoemaker*, 52 Cal. 3d at 24; *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) ("ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged"). In *Gruenberg*, the California Supreme Court dismissed claims against an insurance company's attorneys and insurance adjuster who were deemed to be acting within the scope of their agency. *Id*.

Maximus argues that, as Global's agent, its conduct was protected and no claim can be brought against it for intentional interference with contractual relations. Maximus cites the complaint in asserting that "[p]laintiff here expressly alleges in the complaint that Maximus was Global Excel's agent and that it was acting within the scope of that agency in performing the acts alleged in the complaint." (Doc. 7 at 6.) The section of the complaint Maximus cites reads:

> At all relevant times each of the defendants, including the DOE defendants was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary, and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

1  (Complaint at ¶6.)   This paragraph is on the second page of the

2  complaint, in the section entitled "Parties" and comes before the

3  section on "Factual Background."

4      Plaintiff disputes this characterization, arguing Maximus

5  was not an agent of Global.   Plaintiff explains that Paragraph 6

6  of the complaint was pled in the alternative.   A review of the

7  paragraph reveals that it does not assert Maximus is an agent of

8  Global but makes general allegations about agency and authority

9  with respect to the multiple defendants' acts.

10      Plaintiff further notes that in the November 21, 2006 letter

11  from Maximus to Global regarding the recommended payment amount

12  for Doctors Medical's services, attached by Maximus as Exhibit A

13  to the Declaration of Thomas Naughton, Maximus states: "Maximus

14  is an organization that contracts with Global Excel Management to

15  provide independent external reviews of denials of requested

16  health care services and/or reimbursement of health care

17  services.   Maximus review personnel and consultant specialty

18  physicians are impartial. They do not work for Global Excel

19  Management (the Health Plan)."[2]   (Doc. 7-2 at 4.)   Plaintiff

20  contends this statement by Maximus and its description of itself

21  as an independent external review entity casts doubt on the

22  existence of an agency relationship between Maximus and Global.

23      Plaintiff asserts that Maximus is not Global's agent in its

24

25      [2] For purposes of this Rule 12(c) motion, this letter is
26  properly considered under the "incorporation by reference"
   doctrine because its contents were alleged in the complaint at
27  Paragraph 14 and no party questions its authenticity.   *Branch*, 14
   F.3d at 454.   Maximus also attached the letter as an exhibit to
28  its motion.   *Parrino*, 146 F.3d at 706.

opposition brief.  Because in a 12(c) motion, factual allegations by the non-moving party are accepted as true and allegations of the moving party which are denied are assumed to be false, Maximus cannot prevail on this ground that it is a party to the hospital contract for medical services.  *Hal Roach*, 896 F.2d at 1550.

C.   <u>Is Maximus's Conduct Protected by the Common Interest Privilege as Set Forth in California Civil Code § 47©?</u>

California Civil Code section 47, subdivision (c), states, in pertinent part, that a privileged publication is one made: "In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  Malice, as used in section 47(c), means "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Cabanas v. Gloodt Assocs.*, 942 F.Supp. 1295, 1301 n.7 (E.D. Cal. 1996) (internal quotations and citation omitted).  The plaintiff has the obligation to plead and prove malice, which may not be inferred from the publication itself. Cal. Civ. Code § 48; *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1211-12 (1994).  The existence of the common interest privilege is ordinarily a question of law for the court.  *Institute of Athletic Motivation v. University of Illinois*, 114 Cal. App. 3d 1, 13 n. 5 (1980).

Maximus argues that it contracted with Global to evaluate and make a recommendation regarding the reasonable value of

Plaintiff's services to Global.  It asserts that this meets the test set forth in Cal. Civ. Code § 47(c) because Maximus communicated to an interested party who requested its evaluation when it sent the November 21 billing payment recommendation letter to Global.  Maximus contends the privilege applies because Global fails to allege Maximus acted with malice, which is the only exception to the privilege.

Plaintiff rejoins it has alleged Maximus acted with malice in Paragraph 31 of the complaint where it alleges that Maximus "improperly interfered" with the contractual relationship "by convincing Global Excel to withhold full and proper payment...on the pretext that Global Excel had such a right."  (Complaint at ¶31.)  Plaintiff also cites Paragraph 32: "Maximus knew that Global Excel had no such right, yet nevertheless counseled Global Excel to withhold full payment in the belief that Doctor's Medical Center would compromise the full amount of the claim due to a desire to avoid the expense and effort needed to collect the proper amount due (and not because of any substantive merit to [M]aximus's advice), and that Maximus would be compensated based upon a percentage of such ill-gotten gain."  (Complaint at ¶31.)

While Plaintiff claims it alleged malice by Maximus in the complaint, it is not clearly asserted based on the excerpts of the complaint above.  Maximus's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on this ground is GRANTED WITH LEAVE TO AMEND.

**D.   Is Maximus's Conduct Protected by the Common Law "Adviser's Privilege"?**

The adviser's or agent's privilege extends to individuals and entities who serve as business advisors or agents and is applicable to advice relating to contracts generally.   *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 326 (9th Cir. 1982).   A business advisor may counsel his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests.   *Id*.   "The privilege is designed to further certain societal interests by fostering uninhibited advice by agents to their principals."   *Id*. at 328.   The privilege applies when the defendant acts with a predominant motive to benefit the corporation's interest.   The privilege is not vitiated if the agent's motive to advance its personal interests is secondary to benefitting the principal.[3]   *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1200 (2003).

California Civil Code § 2295 defines agent: "An agent is one

---

[3]After the second hearing on this motion, held on April 13, 2009, Maximus submitted a copy of and requested consideration of a recent California Court of Appeal decision, *Mintz. v. Blue Cross of Cal.*, B207405, 2009 Cal. App. LEXIS 595, *13-14 (April 16, 2009).   This case does not support Maximus's position. First, the party sued in *Mintz* for intentional interference with contract rights - Blue Cross - was a third-party administrator, not an independent external review entity like Maximus.   Second, and most important, the insurance contract in *Mintz* expressly established that Blue Cross was an agent of the insurer.   2009 Cal. App. LEXIS 595 at *14.   Here the existence of an agency relationship between Maximus and Global is a disputed issue of fact.   This dispute makes *Mintz's* conclusion that there is no "financial advantage" exception to the rule that a corporate agent cannot be liable for interfering with a principal's contract irrelevant.

who represents another, called the principal, in dealings with third persons.  Such representation is called agency."  Under California law, the primary characteristic of an agency relationship is the principal's right to control the agent's conduct.  *In re Tsurukawa*, 287 B.R. 515, 521 (9th Cir. 2002). The essential characteristics of an agency relationship are as follows: "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him."  *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.,* 148 Cal. App. 4th 937, 964 (2007) (citation omitted).  Moreover, the existence of agency is a question of fact.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1576 (1994).

        The relationship between Maximus and Global does not appear to fit the definition of agency.  Maximus did not represent Global in dealing with any third party nor did Global have the right to control the conduct of Maximus, as the latter is an independent external review organization.  Maximus claims it was an agent of Global and Plaintiff asserts it was not.  This is a disputed issue of fact and thus is not the proper subject of a 12(c) motion.  In addition to the issue of whether Maximus and Global had an agency relationship, the standard of decision for a Rule 12(c) motion requires that Plaintiff's assertions be taken as true.  Accordingly, it is assumed that Maximus is not an agent of Global.  If Maximus is not an agent of Global, then the common

law adviser's privilege does not apply.

Defendant Maximus's motion for judgment on the pleadings on the ground that the adviser's privilege bars the claim against it is DENIED.

**E.**    **Existence of an Implied In Fact Contract.**

"[A] cause of action for intentional interference with contractual relations requires an underlying enforceable contract."   *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 879 (1997). An implied-in-fact contract is based upon the parties' conduct and is predicated on an actual agreement.   It requires both mutual agreement and consideration.   *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977).   Unlike an express contract, an implied-in-fact contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."   *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455-56 (1998) (citation omitted); Cal. Civ. Code § 1621. The intent to promise must be manifested by a "meeting of minds or an agreement" and one party's intention or expectation alone cannot give rise to any inference of an implied contract. *Division of Labor*, 69 Cal. App. 3d at 275, 277.

Maximus argues that Plaintiff fails to allege any facts establishing the existence of an implied contract.   It asserts that Plaintiff makes only a conclusory allegation in the complaint that an implied contract exists between it and Global and fails to support this with specific factual allegations.

Maximus notes that Plaintiff admits it did not have an express contract with Global.

Maximus contends that because Plaintiff "rejected" Global's check and deposited it under protest, there is no allegation of any mutual assent to enter an agreement.  Maximus further asserts that there is no consideration to support any contract between Plaintiff and Global.  Rendering emergency treatment to M.D. does not qualify as consideration, Maximus argues, because doing "something one is already legally bound to do cannot constitute the consideration needed to support a binding contract."  *Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172, 1185 (1999).  Maximus cites Cal. Health & Safety Code § 1317 and the federal Emergency Treatment and Active Labor Act, 42 U.S.C. § 1395dd for the proposition that Plaintiff was required by federal and state law to render emergency services to the patient.

Plaintiff counters that it has made factual allegations that a valid implied contract existed.  Specifically, Plaintiff alleges that it provided emergency services to M.D., that it billed Global for the services, and that Global acknowledged Doctors Medical's performance by tendering partial payment for the services rendered.  Plaintiff contends that mutual assent existed because Doctors Medical provided services and Global agreed to reimburse Doctors Medical for its services and, in fact, partially performed by sending a check for a portion of the amount due.  Plaintiff argues this shows mutual assent.

Plaintiff also asserts that consideration existed because while federal and state law required Plaintiff to render emergency services, Plaintiff continued to provide services for

**14**

three days after the patient was stabilized and this exceeded the treatment requirements under the law.

The existence of an implied contract is a question of fact. *Division of Labor*, 69 Cal. App. 3d at 276.  The evidence presented by both parties indicates at minimum there is a disputed issue of fact with respect to the existence of an implied contract.  The motion is DENIED on this ground.

## IV. <u>DEFENDANT GLOBAL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>.

### A.   <u>Legal Standard</u>

In response to a motion to dismiss for lack of personal jurisdiction, the court reviews the pleadings and affidavits, upon which the plaintiff needs only to make a prima facie showing that personal jurisdiction exists.  *See Graphic Controls Corp. v. Utah Med. Prod.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).  The court construes the pleadings and affidavits in the light most favorable to the plaintiff.  *See id.*  It is the plaintiff's burden to establish the district court's personal jurisdiction over the defendants.  *Doe, I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam).  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant."  *Id.*  Unless directly contravened, the complaint's factual allegations are taken as true and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  *Id.* at 922.

Personal jurisdiction exists if permitted by California's long-arm statute and federal due process. *See id.* at 1385. Pursuant to Cal. Code of Civ. P. § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits. Two categories of jurisdiction exist: general or specific jurisdiction. *See Lake v. Lake*, 817 F.2d 1416, 1420-21 (9th Cir. 1987).

B.   General Jurisdiction

General jurisdiction exists when a defendant is domiciled in the forum state or "his activities there are 'substantial' or continuous and systematic.'" *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). "To the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945).

The standard for establishing general jurisdiction is "fairly high," *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), and requires that the defendant's contacts be of the sort that approximate physical presence. *See also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Factors to be taken into consideration are

16

whether the defendant "makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  *Bancroft & Masters*, 223 F.3d at 1086 (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)).

1.   <u>Initial Briefing</u>.

Global argues it has not engaged in any substantial activities in California, let alone continuous or systematic ones.  Paul Reed, legal counsel at Global, testifies in his supporting declaration that Global is a Canadian corporation with its principal place of business in Quebec, Canada.  (Doc. 10 at 10.)  It acts as a third-party claims administrator for Elvia France and other European insurers.  Global asserts that it is not an insurance company and is not otherwise affiliated with Elvia France or Maximus.  It did not issue the health insurance policy to the patient at issue nor has it sold any insurance policies to California residents.  Global further asserts that it has never maintained any offices, property or employees in California and has never owned or operated any businesses in California.

Plaintiff contends that Global's activities are properly characterized as substantial, and systematic and continuous, and disputes a number of facts asserted by Global.  First, Plaintiff argues that Global markets its products and services to insurance companies that provide traveler's insurance to foreign nationals traveling to the United States, including California.  Plaintiff asserts that Global maintains a P.O. Box in Vermont, has an

17

office in San Francisco, and hired an independent contractor in Fremont.  It offers as support two pages from Global's website (one page printed on October 15, 2008 and one printed on October 26, 2006) and a declaration of Global's financial director for managed care from a previous action filed against Global in Riverside, California.  (Doc. 18, Declaration of Karlene Rogers-Aberman, Exhibits 1-3.)  Moreover, Plaintiff asserts that Global has previously been sued in California and has done nothing to limit its exposure in this state or restrict coverage to areas outside of California.  Plaintiff also asserts that Global has established a PPO network in the United States through which it contracts with 47 hospitals in California.  Plaintiff contends this activity demonstrates Global enjoys the benefits and privileges of conducting business activities in California. (Rogers-Aberman Declaration, Exhibit 6.)  Plaintiff points out that Global has made a partial payment to Doctors Medical in this case, acknowledging the existence of a debt but disputing the amount.

     In addition, Plaintiff offers other evidence obtained from Global's website.  The following exhibits attached to the Rogers-Aberman declaration are pages printed from Global's website and are dated October 15, 2008 in the bottom right-hand corner.  In Exhibit 4, the website page states that part of Global's medical assistance services include "guarantee of initial payment to overseas hospitals/clinics."  In Exhibit 5, a printout from the "FAQs" section of the Global website indicates that Global does not sell insurance but it "administers the insurance" and provides "claims and medical assistance services."  Exhibit 5

also shows an answer to a question that states "[a]lthough the majority of claims administered by Global Excel are in the US, Global Excel works directly with medical providers throughout the world."  Exhibit 5 describes Global Excel's PPO network: "A PPO is a network developed to provide access to discounts for medical providers in the US. Together with Global Excel's own network, we manage the PPO networks to provide maximum coverage as well as maximum discounting."  Further down the same website page it states "[a]ll providers in the Global Excel network have direct agreements to provide services according to specified rates and will bill Global Excel directly for payment."  Finally, the same page invites users to contact Global's 24-hour call center from the U.S. to verify coverage, and a 1-877 number is listed to dial toll-free from the U.S.

In its reply, Global disputes many of Plaintiff's allegations and asserts a number of objections to the evidence Plaintiff submits.  Global claims it maintains only a P.O. Box in Vermont and not an office.  Global also contends that it never had an office in San Francisco, but rather, used an independent contractor in Fremont.  Global no longer uses the services of the independent contractor.

With respect to Plaintiff's claim that Global maintains an extensive PPO network in California, Global objects to Rogers-Aberman's declaration as hearsay, speculation, and lacking in foundation.  Ms. Rogers-Aberman states that she visited Global's website located at "www.globalexcelusa.com" personally "[i]n connection with preparing this Opposition" and printed pages from the website.  (Doc. 18 at 2.)  Exhibits 1 and 4 through 6 are

dated October 15, 2008 in the bottom right-hand corner.  Because
it is commonly known that a page printed from a website
automatically reveals the date it was printed in the bottom
right-hand corner, this date and Rogers-Aberman's statement that
she personally visited Global's website and printed the pages are
sufficient foundation to authenticate these exhibits.  There is
no dispute that the website is maintained by Global in the
ordinary course of business.  As provided for by Fed. R. Evid.
803(6), the business records exception to the hearsay rule
applies to overcome Global's objections on hearsay grounds.
Alternatively, the statements from the website are party
admissions, which are not hearsay and are admissible under Fed.
R. Evid. 801(d)(2).

Global does not otherwise refute the existence of the PPO
network or respond substantively to Plaintiff's allegations that
Global maintains a network of 47 providers in California.
Global's only other response is to dispute Plaintiff's factual
allegations with respect to the PPO network by denying the
website says what Plaintiff claims and arguing Plaintiff takes
the website statements out of context.  Specifically, Global
argues that "[n]either exhibit [6 or 7]...says that Defendant
created a near 50-hospital PPO system in California."  While it
is true that the website page does not explicitly say this,
Exhibit 6 reveals a list of 47 hospitals in California that a
visitor to Global's website can reach by navigating to the
"Providers" link and then selecting California under the "Select
a state" box.  The website list of hospitals was available by
public access in January 2009 prior to the initial hearing on

this motion.   As of April 2009, the website no longer provides this information or any information on providers in any state.

Global also disputes Plaintiff's characterization that Global has "direct agreements" with hospitals in the PPO network. Global contends the statement on the website page Plaintiff cites does not support Plaintiff's contention, as it states "[a]ll providers in the Global Excel network have direct agreements to provide services according to specified rates and will bill Global Excel directly for payment."  (Doc. 18 at 9.)  Global argues it is unclear from the wording who the direct agreements are with, claiming "[s]ince Global is not an insurance company, it is plausible that the direct agreements are between hospitals and the travel insurers (not Global)."  (Doc. 26 at 4.)  However, a review of the relevant website pages together reveals that Plaintiff's contentions are either directly or indirectly supported.   The web pages refer to the "Global Excel network" and "providers that are in our network."  The fact that Global's website maintains, or in early 2009 maintained, a link to "Providers" and the "Providers" page presented a box to "Select a state" is sufficient evidence to infer that the hospitals listed under the states are providers in Global's network.   At this stage it is not necessary to understand the exact nature of the Global Excel network to determine that the evidence presented by Plaintiff is sufficient to overcome Global's objections that Plaintiff's arguments are based on speculation.

Plaintiff has presented admissible evidence to support its allegations that Global maintains a PPO network that includes 47 hospitals in California.   Global's PPO network demonstrates that

its activities in California are both "substantial" and "continuous and systematic."  Rather than substantively refute these allegations, Global only advances evidentiary objections that are overruled.  Under *Doe*, unless directly contravened, the complaint's factual allegations are taken as true and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  *Doe*, 248 F.3d at 922.  Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

2.    Supplemental Briefing.

     In its supplemental opposition, Plaintiff submits new evidence it maintains establishes Global's activities in California are "substantial" and "systematic and continuous" such that the exercise of general jurisdiction is proper.  First, Plaintiff offers evidence that Global is a registered payor with multiple PPO networks that do business with California hospitals. Plaintiff maintains that as a registered payor with these PPOs, Global's contract with each PPO includes a term that binds it to the terms of the PPO's agreements with hospitals.  Plaintiff submits a declaration from Ira Alexander, the associate health systems director for managed care for Cedars-Sinai Medical Center.  The declaration attaches numerous documents regarding preferred provider organization First Health, including a copy of the contract between Cedars-Sinai and First Health.  Alexander states that Global is a registered payor for First Health under the First Health - Cedars Sinai contract.  (Doc. 32 at 4.)

22

1   Plaintiff also submits the declaration of Richard Snader,
2  the regional director for managed care for the Southern
3  California region of Providence Health System.   Providence owns a
4  number of hospitals throughout Southern California that contract
5  with Private Healthcare Systems Inc. ("PHCS"), a PPO that does
6  business in California.   Providence has 4 hospitals that have
7  current participating facility agreements with PHCS, including
8  Holy Cross Medical Center, Saint Joseph Medical Center, Little
9  Company of Mary Hospital, and Little Company of Mary San Pedro
10 Hospital.   Snader states that Global is a designated payor under
11 the facility agreements between Providence hospitals and PHCS.
12 (Doc. 33 at 4-6.)   Snader attaches copies of parts of the
13 facility agreements, some of which have been redacted.

14   Plaintiff submits a third declaration from Cindy
15 Baccellieri, the director of patient services for Doctors
16 Medical.   Baccellieri states that Doctors Medical has a
17 participating facility agreement with MultiPlan, Inc., a PPO,
18 which she attaches in redacted form.   She asserts that the
19 Doctors Medical - MultiPlan, Inc. contract identifies Global as a
20 payor.   (Doc. 31, Exhibit C.)

21   Second, Plaintiff argues that Global has an increasing
22 volume of claims it has paid to California hospitals such that
23 Global entered into negotiations for a direct hospital agreement
24 with Cedars-Sinai.   Although the negotiations did not result in a
25 final agreement, Plaintiff attaches a letter written on company
26 letterhead by Cindy Moore, Global's director of managed care
27 contracting, to Cedars-Sinai dated February 6, 2004 during
28 discussions between the two companies.   The letter reads in part:

23

1

2

3

4

5

6

        First let me elaborate about our company. Global Excel
        Management is located in Lennoxville, Quebec, Canada.
        We've been in business for almost a decade, and our
        medical claims processed last year exceeded $60M. We
        expect to grow 30% this year, increasing our client
        base and thereby the number of members we manage by
        negotiating arrangements to be the exclusive Travel
        Assist/Third Party Administrator/Network PPO for even
        more travel insurance and destination insurance
        companies, including several in Mexico, Germany and the
        UK.

7

8

9

10

11

12

        Our company is unique in that we are a one-stop shop
        for assisting the traveler (calling us for assistance
        re: any healthcare emergency during their time in the
        U.S.), medically managing them (steering them to the
        preferred provider in the area), and processing all of
        the claims. I hope you will find this "one-stop-shop"
        an attractive aspect to doing business with us, as I
        and the rest of my colleagues at Global Excel
        Management will be there for your team from the
        beginning (registration) to the end of the patient
        cycle (receiving the negotiated payment).

13

14

15

16

17

18

19

20

        My colleague Mike Grady informed me that your Patient
        Accounting Department (specifically Dorothy Williams)
        has worked well with us on some cases and after
        research about your facility and its location in
        conjunction to our tourist destinations, we've
        concluded that Cedars-Sinai Medical Center would be an
        excellent addition to our hospital network. Our claims
        data shows that we've received and paid claims for
        Cedars-Sinai Medical Center (CSMC) in excess of $1M in
        charges over the last 24 months. As I indicated on the
        telephone, we can and will increase those figures by
        steering more members there, as our team of case
        managers will know that CSMC is our "preferred"
        facility in that area thanks to our Geo Access
        software.
             ...

21

22

23

        I look forward to working with you to negotiate a
        mutually beneficial managed care agreement that will
        allow Global Excel Management (GEM) the opportunity to
        steer all of our members in the surrounding Los Angeles
        area to Cedars-Sinai Medical Center.

24

25

26

27

(Doc. 32, Exhibit F.)   In addition, in an email from Moore to

Alexander, Moore states that during the first half of 2004,

Global's claims volume to hospitals in the Los Angeles area was

$2.7 million.   (Doc. 32, Exhibit L.)

28

    Global's supplemental reply takes issue with the fact that

Plaintiff submits new evidence and does not address Global's previous evidentiary objections to the Rogers-Aberman declaration from Plaintiff's original opposition.  Specifically, Global argues Plaintiff's new declarations should be disregarded because Plaintiff fails to authenticate the evidence submitted with the Rogers-Aberman declaration.  This is specious.  This motion is a search for the truth.

Global objects to the Baccellieri declaration on hearsay grounds and to the redactions Plaintiff made to the attached exhibits.  Global further argues that the facility agreement between MultiPlan and Doctors Medical does not mention Global Excel, nor did a Global representative sign the contract.  Global also objects to Exhibit C of the Baccellieri declaration as vague and ambiguous in that it fails to define the term "payor." Global makes essentially the same arguments in its objections to the Snader declaration.  Global also generally argues that the evidence Plaintiff submits does not show forum activity by Global in June 2006, which is when Plaintiff rendered services to the patient in this case.

With respect to the Alexander declaration, Global makes the same arguments regarding the First Health – Cedars Sinai contract as it does for the Baccellieri and Snader declarations.  Global points out that its name is not mentioned in the contract, nor is it a party to the contract.  Global also rebuts Plaintiff's assertion that it is a payor under this agreement, arguing that the term "payor" is undefined and it is unclear how being a payor establishes minimum contacts.

Global objects to the exhibits attached to the Alexander

declaration on hearsay grounds.  Specifically, Global objects to the February 6, 2004 letter from Cindy Moore attached as Exhibit F as hearsay.  In addition, Global argues "there is no evidence establishing that 'Cindy Moore' was a representative of Global Excel or that she was authorized to enter into contracts on behalf of Global Excel."  This is disingenuous.  Alexander states he had conversations and written communications with Cindy Moore, Global's director of managed care contracting.  He attaches a letter he received from Moore which is written on Global letterhead and states her title and mail and email addresses. The letter contains statements that are party admissions and, under Fed. R. Evid. 801(d)(2), are exempted from the definition of hearsay.  The letter is also subject to the business records exception under Fed. R. Evid. 803(6) in that it was maintained by Cedars-Sinai in the ordinary course of business.  Global objects to emails between Moore and Alexander on the same grounds.  These objections are similarly overruled.

        Other than technical objections, Global has no contrary evidence.  The supplemental evidence submitted shows that Global is a registered payor with multiple PPO networks doing business with California hospitals and that it has paid a large volume of claims to California hospitals.  This evidence is sufficient to support the exercise of general jurisdiction as it demonstrates that Global's activities in California are substantial and continuous and systematic.

26

**3.   Conclusion.**

For the foregoing reasons, Defendant Global's motion to dismiss for lack of personal jurisdiction is DENIED.


**V.   PLAINTIFF'S AND DEFENDANT GLOBAL'S CROSS-MOTIONS FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11.**

Both Doctors Medical and Global cross-move for sanctions pursuant to Fed. R. Civ. P. 11 with respect to the other party's submissions on the motion to dismiss for lack of personal jurisdiction.  Federal Rule of Civil Procedure 11 ("Rule 11") gives the court authority to issue sanctions against an attorney or unrepresented party who signs a "pleading, written motion, [or] other paper" that is brought for any improper purpose or is not well grounded in fact, warranted by existing law, or made in good faith.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir. 1996).  Rule 11 addresses the problems of frivolous filings and misuse of judicial procedures as a tool for harassment.  *Stewart v. American International Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986).  It imposes an affirmative duty on a party or counsel to investigate the law and facts before filing.  *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987).

An objective standard of reasonableness governs both the "improper purpose" and "frivolous" inquiries under Rule 11.  *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  An improper purpose is one to harass or cause

27

unnecessary delay or needless increase in the cost of litigation. *Id*. at 1110.   A complaint is frivolous if it is both baseless and made without a reasonable and competent inquiry.   *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

Plaintiff contends that Global's statement in its moving papers that it "has never owned or operated any businesses in California" is blatantly false in light of the evidence Plaintiff has submitted.   Global moves for sanctions on the basis that Plaintiff failed to address the evidentiary issues raised in the initial moving papers, failing to authenticate pages it attached to the Rogers-Aberman declaration.   Global argues that this indicates Plaintiff has abandoned its original opposition, conceding it had no merit.   Global reasons that this means Plaintiff filed a frivolous opposition and should be sanctioned.

Global's motion is spurious.   This motion is a close call. Global has not been forthcoming.   Its conduct borders on the dishonest in intentionally withholding information from the court and adopting a scorched-earth acknowledge nothing litigation position.   Global's attorneys have a duty to the interests of just resolution of controversies that exceeds their adversarial duties, and a similar duty as officers of the court.   Global's attorneys' conduct has also vexatiously multiplied the extent and needless contentiousness of these proceedings under 28 U.S.C. § 1927.

Both Plaintiff's and Defendant Global's motions for sanctions are DENIED.

28

**VI.  GLOBAL'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6).**

**A.   Legal Standard.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it is required to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In deciding a motion to dismiss, the court accepts as true all material factual allegations in the complaint and construes them in the light most favorable to the plaintiff.  *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).

The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").  Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988.  Thus when ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court may take judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1988).

B.   <u>Analysis</u>.

Defendant Global moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it pleads the complete defense of accord and satisfaction under California Commercial Code § 3311.  Enacted in 1992, § 3311 states in part:

> **(a) If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subdivisions apply.**
>
> **(b) Unless subdivision (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.**

Global argues that § 3311 applies because 1) Global in good faith, relying on the advice of Maximus, tendered a $46,404.26 check to Plaintiff in full satisfaction of the claim, 2) the amount of Plaintiff's claim was subject to a bona fide dispute in that Plaintiff contended it was owed $159,207.21 and Global claimed the services were valued at $46,404.26, 3) Plaintiff obtained payment by cashing Global's check, and 4) the check stub and an accompanying letter from Global contained a conspicuous statement that the check was tendered as full satisfaction of the claim because they were both marked "payment in full."  Global asserts that the terms of § 3311 were satisfied by its tendering of the check.  It also asserts that, under § 3311, a creditor is not permitted to keep the check under protest and thus Plaintiff's claim was discharged.

Plaintiff argues that California Civil Code § 1526 applies, although it acknowledges the section appears to conflict with § 3311, and contends that § 1526 was never expressly repealed by the state legislature.  § 1526 reads in part:

> **(a) Where a claim is disputed or unliquidated and a check or draft is tendered by the debtor in settlement thereof in full discharge of the claim, and the words "payment in full" or other words of similar meaning are notated on the check or draft, the acceptance of the check or draft does not constitute an accord or satisfaction if the creditor protests against accepting the tender in full payment by striking out or otherwise**

deleting that notation or if the acceptance of the
check or draft was inadvertent or without knowledge of
the notation.

Defendant Global urges the adoption of the court's holding
in *Directors Guild of America v. Harmony Pictures, Inc.*, 32
F.Supp.2d 1184 (C.D. Cal. 1998), which held California Commercial
Code § 3311 superseded Civil Code section 1526 because the two
were irreconcilable and the Commercial Code section was enacted
later.  The court analyzed the statutes and found them in
conflict.  Because "[w]hen two acts governing the same subject
matter cannot be reconciled, the later in time will prevail over
the earlier," *L.A. Police Protective League v. City of Los
Angeles*, 27 Cal. App. 4th 168, 178 (1994), the *Directors Guild*
court gave effect to the later-enacted Commercial Code § 3311.  A
California appeals court followed *Directors Guild* and ruled that
Commercial Code § 3311 controlled where an insurer issued an
insured a check with the language "full and final settlement" on
the face and the insured wrote "partial payment" on it and cashed
it.  *Woolridge v. J.F.L. Electric, Inc.,* 96 Cal. App. 4th Supp.
52, 60-61 (2002).

Plaintiff argues that section 1526 was not expressly
repealed by the California Legislature, even though 16 years have
passed since the passage of § 3311, and that "[r]epeals by
implication are not favored."  *Stone Street Capital, LLC v.
California State Lottery Commission*, 165 Cal. App. 4th 109, 123
(2008) (citing *Fuentes v. Workers' Comp. Appeals Bd.*, 16 Cal. 3d
1, 7 (1976)).  Further, Plaintiff argues neither *Directors Guild*,

as a district court decision, nor *Woolridge*, as a state court decision, has binding effect on this court.[4]

Plaintiff also argues that even if, arguendo, section 3311 is applied, the good faith requirement of the provision is not met in this instance.  Plaintiff explains that after exchanging a series of counter offers with Global, on January 2, 2007 Plaintiff sent a letter expressly rejecting the offer of $46,046 and communicating Doctors Medical's intent to proceed with litigation.  On March 28, 2007, Doctors Medical received a letter from Global dated November 27, 2006 (more than three months prior) that enclosed a check for $46,404.26, which was also dated November 27, 2006.  Plaintiff contends the backdating of the check and letter evidence Global's bad faith.  Global contends that because it relied on Maximus's recommendation, its payment was made in good faith.

Whether an accord or satisfaction has been reached is a question of fact.  *Woolridge,* 96 Cal. App. 4th Supp. at 57; *In re Marriage of Thompson*, 41 Cal. App. 4th 1049, 1058-59 (1996). Section 3311 requires "good faith" tendering, which is defined in section 1201(b)(20) as honesty in fact and the observance of reasonable commercial standards of fair dealing.  This is a

---

[4] In the alternative, Plaintiff argues that section 3311 does not apply because the California Commercial Code applies only to transactions involving the sale of goods and the transaction at issue here involves the provision of services. But Article 3 of the California Commercial Code "applies to negotiable instruments."  Cal. Com. Code § 3102(a).  Checks are negotiable instruments.  Cal. Com. Code § 3104.  As such, section 3311 applies because Global's payment of $46,404.26 to Plaintiff was made with a check.  *See Wooolridge*, 96 Cal. App. 4th Supp. at 59.

question of fact.   This issue cannot be decided as a matter of law.

Accordingly, Defendant Global's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED.


## VII. CONCLUSION.

For the foregoing reasons:

1) Defendant Maximus's motion for judgment on the pleadings on the ground that it was acting as Global's agent and is therefore precluded from liability for intentional interference with contract is DENIED;

2) Defendant Maximus's motion for judgment on the pleadings on the ground that it is protected by the common interest privilege authorized under Cal. Civ. Code § 47(c) is GRANTED WITH LEAVE TO AMEND;

3) Defendant Maximus's motion for judgment on the pleadings on the ground that it is protected by the common law adviser's privilege is DENIED;

4) Defendant Maximus's motion for judgment on the pleadings on the ground that Plaintiff fails to allege facts that establish the existence of an implied contract is DENIED;

5) Defendant Global's motion to dismiss for lack of personal jurisdiction is DENIED;

6) Plaintiff's and Global's motions for sanctions are

**DENIED; and**

    **7) Defendant Global's motion to dismiss for failure to state a claim on the ground that the complaint pleads the complete defense of accord and satisfaction is DENIED.**

    **Any amended complaint shall be filed within thirty (30) days following the date of electronic service of this decision.**

IT IS SO ORDERED.

      **Dated:**   **August 14, 2009**     **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE